Hun, 211), and I, therefore, vote to affirm. Dykman, J., dissented.

In the Matter of the Accounting of John H. Smith, as Executor, etc., of John T. Smith, Deceased.— Decree affirmed, with costs to respondent, to be paid out of the estate.—

DYKMAN, J.: This proceeding was instituted in the Surrogate's Court of the county of Rockland, by John H. Smith, one of the executors of the estate of John T. Smith, deceased, for an accounting of his proceedings as such executor, based upon a petition filed in the Surrogate's Court on the 26th day of June, 1891, before George W. Wirant, then surrogate of Rockland county. All the parties interested were duly cited. Testimony was introduced and taken before Surrogate Wirant, and before anything further was done he became ill, and William McCauley, district attorney of Rockland county, became acting surrogate, and a few days before the close of his office as district attorney, he signed a decree in this proceeding. A. S. Tompkins, who had been counsel for the executor, then became surrogate, and a motion was made before him to set aside or resettle the decree of District Attorney McCauley, on the ground that it did not conform to the facts as disclosed by the testimony. That motion was certified to Frank Comesky, then district attorney of Rockland county, by reason of the disability of Tompkins on account of his connection with the case as counsel. Comesky vacated the previous decree and signed a decree in conformity to the findings previously made by him, and from that decree the present appeal was taken. The last decree allows the executor several payments which he had made which were disallowed by the first decree. In other respects the two decrees are practically the same. The disbursements allowed to the executor were all actually made, and there is no sufficient reason why they should not be allowed. The largest claim is the sum paid to the widow for her right of dower. Both the executors charge themselves with the whole sum received for the real property sold, and as they were obliged to pay the widow, who had a right of dower in the premises, it follows that the sum so paid to her must be deducted from the amount they received. The power to open and modify the first decree is expressly conferred by subdivision 6 of section 2481 of the Code of Civil Procedure. The decree should be affirmed, with costs to the respondents, to be paid from the estate. Brown, P. J., and Pratt, J., concurred.

Squire Hill, Respondent, v. Robert S. Westcott, Appellant.— Judgment affirmed, with costs.—

PRATT, J.: It seems clear that the contract in question herein was a specific contract between Westcott on the one side and Hill and Harrison on the other, wherein Westcott agreed to pay Hill and Harrison ten cents per can cartage on milk carted by them from their creamery at Sidney to the station at the same place and shipped over certain specified lines of railroad. The milk was shipped as per this agreement. We are, therefore, of the opinion that the judgment should be affirmed, with costs. Brown, P. J., and Dykman, J., concurred.

Kate Foley, Appellant, v. The Manhattan Elevated Railroad Company, Respondent.— Judgment affirmed, with costs.—

DYKMAN, J.: This is an action for damages for injuries sustained by the plaintiff upon a stairway leading to the elevated railroad station of the defendant. At the close of the testimony the complaint of the plaintiff was dismissed, and she has appealed from the judgment of dismissal. The testimony

on the part of the plaintiff is very unsatisfactory in respect to the precise cause of her injury. She says that she entered the car at Twenty-third street and Third avenue, and left at Sixty-seventh street. She started down stairs, and after descending about five steps, her feet were held fast in the rubber, and she was thrown down stairs. She says her feet were caught in the rubber which was on the stairs. She says both of her feet were caught in the rubber, and she fell down. She could not say how she came to fall all the way down, but that her feet were held fast. She says her niece had preceded her and returned, took her by the hand and turned her over and then she fell to the bottom; then her feet got loose, and she rolled down to the platform. On her cross-examination she said she put both feet on the same step at the same time. The niece of the plaintiff, who was with her at the time, was called and she testified, after she missed her aunt, she went back and took her by the shoulders and turned her, and she loosened her from the rubber and then she slipped down the remainder of the stairs to the bottom. The plaintiff fell to the bottom of the stairs when she loosened her from the rubber. Then she said that, after she loosened her from the rubber, she fell about two steps and then rested on the platform. After she had fallen two steps she went to the bottom, and then the ticket man came down and took her up stairs in the waiting room and she stayed there. Then the station agent of the defendant at Sixty-seventh street was called as a witness, and he said there were two flights down the stairway, seventeen steps at the top flight and twelve on the bottom, and that the top flight was the one upon which the plaintiff fell. He says that before the plaintiff fell, he went up the stairs and down the stairs and examined them, and they were in a good condition at that time and there were no holes in the rubbers. The following question was asked him: "Q. Was there anything the matter, holes worn, frayed, cut or torn? A. Nothing whatever, sir." Then he went on to say that he examined every step of the stairs after the accident and found everything in good order, about two or three minutes after the accident, as soon as he could do it. Then the porter of the defendant at Sixty-ninth street was called and he said that he knew the condition of the stairs on that day, and found them in good order, and the rubbers nailed on and there was nothing loose, and no nails sticking out. He put his hand on the stairs where the lady was and found nothing loose, neither nails nor screws. It thus appears that the testimony respecting the accident was so unsatisfactory and uncertain that it was insufficient to charge the defendant with negligence. The plaintiff says that both her feet were on the same step at the same time, and that they were both caught in the rubber. She says further, that the heels of both her shoes were torn off. This state of affairs would seem to be impossible from the testimony of the employees of the defendant, but even if it should be assumed that the stairs were at that time out of order so that the plaintiff's shoes would be caught under the rubber, that state of affairs could not have existed for a sufficient length of time to justify a charge of negligence against the defendant for their condition. If they were out of order it was for a very few moments, during which time the defendant had no notice of their condition and no time or opportunity for their reparation. The law would not justify an inference of negligence against the defendant for a defect in these stairs, or the rubber upon them which had existed but for a